**Richard H. M. SWANN, Plaintiff,**

**v.**

**Tom ADAMS, Secretary of State of the State of Florida, et al., Defendants.**

**Civ. No. 186–62–M.**

United States District Court
S. D. Florida,
Miami Division.

Dec. 23, 1965.

Supplemental Opinion March 18, 1966.

Probable Jurisdiction Noted
Oct. 10, 1966.
See 87 S.Ct. 37.

Paul & Sams, Miami, Fla., for plaintiff Richard H. M. Swann.

Earl Faircloth, Atty. Gen. of Florida, Tallahassee, Fla., for defendant Tom Adams.

John U. Lloyd, Ft. Lauderdale, Fla., for L. B. Gates, Supervisor of Registration of Broward County, Fla.

. Thomas C. Britton, Miami, Fla., for Claude Brown, Supervisor of Registration of Dade County.

Paul E. Sawyer, Key West, Fla., for W. B. Freeman, Supervisor of Registration of Monroe County.

Halley B. Lewis, Ft. Myers, Fla., John E. Mathews, Jr., Jacksonville, Fla., Mallory E. Horne, Tallahassee, Fla., William G. O'Neill, Ocala, Fla., amici curiae.

Before JONES, Circuit Judge, and McRAE and DYER, District Judges.

PER CURIAM.

Before this Court for determination is the question of the constitutional validity of a statute of Florida enacted at a 1965 Special Session of its Legislature, designated as HB 19-XX, providing for the apportionment of the membership of the Florida State Senate and House of Representatives. A copy of the statute is annexed as an appendix. The statutory apportionment as made by HB 19-XX has been subjected to several grounds of attack. It is urged that the provisions of Section 1(3) are invalid. This Section continues in office those senators, whose districts have been abolished, for the remainder of the term to which they were elected, which would be until the general election of November, 1968. It is contended that the provisions of Section 1(5) of the Act cannot be upheld. This Section requires that where two or more counties are assigned more than one senatorial district, no two senators representing any district comprised of such counties shall reside in the same county until each county has a senator residing and qualified to vote therein. It is said that the subdistricting of Dade County but not other counties is an unwarranted discrimination. The most serious of the questions presented are those which deal with the one man-one

vote, equality of representation principle. Other issues are raised but are, in the Court's opinion, without merit and without sufficient plausibilty to require discussion.

It seems apparent that the carrying forward into a newly constituted legislature those senators, previously elected, who no longer have a constituency cannot be upheld. To permit these senators to serve who will no longer be representing any electors would result in giving an added weight to the votes of the electors of those areas from which they were originally chosen. To eliminate this inequality the Act (HB 19-XX) must be modified by the deletion of Section 1(3).

It is not shown that Section 1(5) is unconstitutional. The effect of this Section is to prevent the election of two or more senators from any county until a senator has been elected from each county where two or more counties are combined in two or more senatorial districts. By way of example, Duval County, with a 1960 population of 455,411 is combined with Nassau County, with a population of 17,189, and St. John's County, with a population of 30,034, in senatorial districts numbered 16, 18, 21, 31, 33 and 58. Thus it is provided that Nassau, with about three percent of the population of the districts and St. John's, with about six percent of the population of the districts, will each have one-sixth of the senatorial representation from the multi-county districts. The provision relates to residence of the senators and not to the voting strength of those who elect them. Although each county of the multi-county districts is entitled to have a senator resident within it, the tenure of such senators depends upon the district-wide electorate. Such senator represents, not the county where he resides, but the district. The weight of the voter in the most populous of the multi-county districts (Duval County in the stated example) for senators to represent him is approximately equal in weight to voters in the less populous counties. This question is the same as was decided in Fortson v. Dorsey, 379 U.S. 433, 85 S.Ct. 498, 13 L.Ed.2d 401, where several districts were within a county. It has not been suggested that the residence requirement in the Florida statute was intended to minimize or cancel out the voting strength of racial or political elements of the voting population, or that it would have such effect. Cf. Fortson v. Dorsey, supra.

Dade and Monroe Counties comprise six senatorial districts under the statute. Two districts, numbered 12 and 39, are composed of that part of Dade County comprising the third congressional district as it existed on June 1, 1965. Two other districts, numbered 40 and 41, are made up of that portion of Dade and Monroe Counties comprising the fourth congressional district as it existed on June 1, 1965. In no other instance are legislators elected from districts with other boundaries than county lines. It is asserted that this is an illegal discrimination. It has not been made to appear that these districts were set up for the purpose of lessening or enhancing the weight of the votes of the citizens residing in these districts, or that it was designed to or did affect the voting strength of any racial or political group. This being so, it cannot be said that the Federally protected right of equality of voting strength has been violated. If there has been any resulting injustice it is a politcial one for which a political remedy should be sought.

We are now brought to the problem as to whether the allocation of senators and representatives among the citizens of the State is so disproportionate as to amount to the invidious discrimination which has been condemned as violative of the Equal Protection Clause. Efforts have been made by some of the amici curiae to defend the legislative enactment, and to persuade us that the statutory departures from the equal population principle are within permissible limits. The Attorney General of Florida, with commendable candor, concedes that the standard has not been met, but urges that we should once more afford the State of Florida, acting through its leg-

islature, an opportunity to put its legislative house in order. If this can be done we think it should be done. In attempting to solve problems of the legislative apportionment factors other than one person-one vote may loom large. Adjacent counties, neither of which has a population sufficient to have a senator or representative by itself, may be so wholly different in economic character that it would be inadvisable to unite them for the purpose of legislative representation. We can recognize that such problems can and do exist but we have no claim to the competence required to solve them. It is the belief of the Court that the Florida legislature, as it will be constituted under the statute with the Section 1(3) senators eliminated, will have a majority such as will permit, if there be the will to do so, a correction of the malapportionment which exists under the Act. In accepting the legislative enactment as an interim measure, the Court does not overlook the prior indulgence which had been granted but we are reminded that our prior order was entered before the guidelines of Reynolds v. Sims, supra, and other decisions of the Supreme Court had been drawn. In affording a further opportunity to the Florida legislature to adopt a constitutionally acceptable apportionment, we have the confident hope that there will be a recognition, by the legislative bodies, of the paramount necessity of conforming to the constitutional requirement that "both houses of a state legislature must be apportioned on a population basis," and that the "State make an honest and good faith effort to construct districts, in both houses of its legislature, as nearly of equal population as is practicable." Reynolds v. Sims, 377 U.S. 533, 577, 84 S.Ct. 1362, 1390, 12 L.Ed.2d 506. Precise exactness cannot, of course, be achieved but only such minimal departures as necessity demands will be permitted. Variations are to be sanctioned only when they cannot be avoided. We do not think it can be assumed that the fifteen percent variance allowed in Toombs v. Fortson, N.D.Ga. 1965, 241 F.Supp. 65, establishes a rule

of tolerance that will be followed as a legal principle. If the Florida legislature does not adopt a valid plan of apportionment then this Court must do so; and so that it may, if need be, do so, jurisdiction will be retained. No further action will be taken by the Court until the adjournment of the next regular session of the legislature or, in the event it shall not have enacted reapportionment legislation, until the lapse of the time required to convene and hold a legislative special session for reapportionment.

## ORDER

The premises considered, it is ordered, adjudged and decree that:

1. The plan of apportionment of the Florida legislature, as made by HB 19-XX enacted at its special session in 1965, in both the Senate and House of Representatives does not meet the requirements of the Equal Protection Clause of the Federal Constitution as construed and applied in Reynolds v. Sims, supra, and other decisions of the Supreme Court. The apportionment made by said statute, as herein modified, is approved as an interim plan for a period ending sixty days after the adjournment of the 1967 regular session of the Florida legislature;

2. The provisions of Section 1(3) of said statute are in violation of the Equal Protection Clause of the Federal Constitution. The statute, and the plan of apportionment thereby enacted, are modified by deleting and striking therefrom the aforesaid Section 1(3); and

3. The Court retains jurisdiction of this cause until such time as there shall be an adjudication that a valid plan of legislative apportionment has been enacted, or until such a plan has been made effective by a decree of this Court.

## APPENDIX

### A bill to be entitled

An act to provide for the apportionment of the membership of the senate and the house of representatives of the legislature of the state of Florida; providing for subdistricting; repealing sections 10.01, 10.02, 10.03 and

10.04, Florida Statutes; prescribing terms of office of members of both houses; providing for continuance in office by members until the general election in November, 1966; providing for continuance in office of certain senators until 1968; providing for elections; providing an effective date.

Be It Enacted by the Legislature of the State of Florida:

Section 1. (1) The representation of the people of the state in the senate of the state shall continue as now constituted until the general election to be held in November, 1966. Thereafter, the representation of the senate of the state shall be as set forth in this section.

(2) The representation in the senate of the Florida legislature shall consist of fifty-eight (58) members, each representing a district, which districts are created and numbered as follows:

First district—Escambia and Santa Rosa counties, provided, however, the senator serving from the present first district shall be the senator from the first district until the general election of 1968.

Second district—Escambia and Santa Rosa counties.

Third district—Okaloosa and Walton counties, provided, however, that the senator serving from the present thirty-ninth district shall be the senator from the third district until the general election of 1968.

Fourth district—Jackson, Calhoun, Washington and Holmes counties.

Fifth district—Gulf, Liberty, Wakulla, Gadsden and Franklin counties.

Sixth district—Polk county.

Seventh district—Polk county, provided, however, that the senator serving from the present seventh district shall be the senator from the seventh district until the general election of 1968.

Eighth district—Leon county.

Ninth district—Hernando, Sumter, Citrus and Pasco counties.

Tenth district—Jefferson, Madison, Taylor, Hamilton, Columbia, Suwannee, and Lafayette counties.

Eleventh district—Pinellas county, provided, however, that the senator serving from the present eleventh district shall be the senator from the eleventh district until the general election of 1968.

Twelfth district—That portion of Dade county comprising the third congressional district as it existed on June 1, 1965.

Thirteenth district—Dade and Monroe counties, provided, however, that the senator serving from the present thirteenth district shall be the senator from the thirteenth district until the general election 1968.

Fourteenth district—Pinellas county.

Fifteenth district—Baker, Bradford, Clay, Union, Putnam and Flagler counties.

Sixteenth district—Duval, Nassau, and St. Johns counties.

Seventeenth district—St. Lucie, Indian River and Martin counties.

Eighteenth district—Duval, Nassau and St. Johns counties.

Nineteenth district—Orange and Seminole counties, provided, however, that the senator serving from the present nineteenth district shall be the senator from the nineteenth district until the general election of 1968.

Twentieth district—Orange and Seminole counties.

Twenty-first district—Duval, Nassau, and St. Johns counties.

Twenty-second district—Sarasota county.

Twenty-third district—Lake and Osceola counties, provided, however, that the senator serving from the present twenty-third district shall be the senator from the twenty-third district until the general election of 1968.

Twenty-fourth district—Lee, Hendry, and Collier counties.

Twenty-fifth district—Bay county, provided, however, that the senator serv-

ing from the present twenty-fifth district shall be the senator from the twenty-fifth district until the general election of 1968.

Twenty-sixth district—Pinellas county.

Twenty-seventh district—Marion, Dixie, Levy and Gilchrist counties.

Twenty-eighth district—Volusia and Brevard counties.

Twenty-ninth district—Hardee, DeSoto, Okeechobee, Glades, Charlotte, and Highlands counties.

Thirtieth district—Broward county.

Thirty-first district—Duval, Nassau, and St. Johns counties, provided, however, that the senator serving from the present thirty-first district shall be the senator from the thirty-first district until the general election of 1968.

Thirty-second district—Alachua county.

Thirty-third district—Duval, Nassau, and St. Johns counties.

Thirty-fourth district—Hillsborough county.

Thirty-fifth district—Palm Beach county, provided, however, that the senator serving from the present thirty-fifth district shall be the senator from the thirty-fifth district until the general election of 1968.

Thirty-sixth district—Manatee county.

Thirty-seventh district—Volusia and Brevard counties, provided, however, that the senator serving from the present thirty-seventh district shall be the senator from the thirty-seventh district until the general election of 1968.

Thirty-eighth district—Volusia and Brevard counties.

Thirty-ninth district—That portion of Dade county comprising the third congressional district as it existed on June 1, 1965.

Fortieth district—That portion of Dade and Monroe counties comprising the fourth congressional district as it existed on June 1, 1965.

Forty-first district—That portion of Dade and Monroe counties comprising the fourth congressional district as it existed on June 1, 1965, provided, however, that the senator serving from the present forty-first district shall be the senator from the forty-first district until the general election of 1968.

Forty-second district—Orange and Seminole counties.

Forty-third district—Dade and Monroe counties, provided, however, that the senator serving from the present forty-third district shall be the senator from the forty-third district until the general election of 1968.

Forty-fourth district—Dade and Monroe counties.

Forty-fifth district—Orange and Seminole counties.

Forty-sixth district—Dade and Monroe counties.

Forty-seventh district—Pinellas county.

Forty-eighth district—Dade and Monroe counties.

Forty-ninth district—Palm Beach county.

Fiftieth district—Palm Beach county.

Fifty-first district—Broward county.

Fifty-second district—Dade and Monroe counties.

Fifty-third district—Broward county.

Fifty-fourth district—Broward county.

Fifty-fifth district—Hillsborough county.

Fifty-sixth district—Hillsborough county.

Fifty-seventh district—Hillsborough county.

Fifty-eighth district—Duval, Nassau, and St. Johns counties.

(3) If by this reapportionment the district of a member of the senate, as now constituted, who is not otherwise assigned a district hereinabove and whose term of office expires with the general election of November, 1968, shall be altered, abolished or the number of his district

relocated outside of his present district, then such member shall continue as a senator for the county of his residence during the remainder of his term and shall have an equal vote with any other senator and the number of his senatorial district shall be indicated by adding the letter "X" after the number of the district to which he was elected, even though it increases the maximum number of members herein provided for.

(4) The even numbered senatorial districts shall be filled in the general election of November, 1966, and shall be for four-year terms. The odd numbered senatorial districts, except as to any district for which specific provision has been made herein for representation by a present senator for that district until the general election of 1968, shall be filled in the general election of November, 1966, initially for a two-year term. Thereafter, all odd numbered senatorial districts shall be filled for four-year terms.

(5) Where the same two or more counties or portions thereof are assigned more than one (1) senatorial district, no two (2) senators each representing any district comprised of said counties shall reside in the same county until each county in said district has a senator residing in said county who is a qualified elector of that county. The secretary of state shall establish for the necessary number of districts such residential qualifications for candidates as shall be required to accomplish the purposes of this subsection.

(6) Any senator elected in 1964 and designated herein by a district bearing the letter "X" may run in 1966 for a new two (2) or four (4) year senatorial office if there is a vacancy in the district of his residence, provided that prior to qualifying for the new two (2) or four (4) year term he resigns from the office to which he was elected in 1964.

Section 2. The house of representatives of the Florida legislature shall consist of one hundred nine (109) members apportioned among the counties according to the latest federal decennial census of population. Until reapportioned according to the census of 1970 the representation in the house of representatives shall be apportioned as follows:

| County or Counties | Number of Members |
| --- | --- |
| Dade | 18 |
| Duval | 9 |
| Hillsborough | 9 |
| Pinellas | 8 |
| Broward | 7 |
| Orange | 5 |
| Palm Beach | 5 |
| Polk | 4 |
| Escambia | 3 |
| Volusia | 3 |
| Brevard | 3 |
| Sarasota | 1 |
| Leon | 1 |
| Alachua | 1 |
| Manatee | 1 |
| Bay | 1 |
| Okaloosa | 2 |
| Lake | 1 |
| Seminole | 1 |
| Lee | 1 |
| Marion | 1 |
| Monroe | 1 |
| Gadsden | 1 |
| St. Lucie | 1 |
| Pasco | 1 |
| Jackson | 1 |
| Osceola | 1 |
| Santa Rosa | 1 |
| Putnam | 1 |
| Indian River | 1 |
| Walton, Holmes, Washington | 1 |
| Gulf, Calhoun, Liberty | 1 |
| Franklin, Wakulla, Jefferson | 1 |
| Taylor, Madison | 1 |
| Lafayette, Suwannee, Hamilton | 1 |
| Columbia, Union | 1 |
| Baker, Nassau | 1 |
| Bradford, Clay | 1 |
| St. Johns, Flagler | 1 |
| Dixie, Levy, Citrus, Gilchrist | 1 |
| Hernando, Sumter | 1 |
| DeSoto, Hardee | 1 |
| Okeechobee, Martin | 1 |
| Hendry, Collier, Glades | 1 |
| Highlands, Charlotte | 1 |

Section 3. Senators and members of the house of representatives shall reside in and be elected at large by the voters in the respective counties or districts for which they were chosen; provided, however, that when any county has more than ten (10) representatives, it shall be divided into districts by an act of this legislature, the number of such districts to be the number of representatives in excess of ten (10) and the representatives in excess of ten (10) to be a qualified elector of and reside in and be elected by the qualified electors in their respective districts.

Section 4. All senators, except as to those to be elected to new initial two (2) year terms as provided for in section one (1) herein, and except when vacancies are to be filled, are to be elected for four (4) years. Members of the house of representatives are to be elected for two (2) years.

Section 5. The provisions of this act are severable and if any word, sentence, paragraph, subsections or sections of the act shall for any reason be held void or unconstitutional by any court of competent jurisdiction, the decision of said court shall not affect or impair the validity of any of the remaining words, sentences, paragraphs, subsections or sections of this act.

Section 6. Candidates for offices created herein shall be nominated in 1966 in the manner provided by law and the offices shall be filled at the general election November, 1966. For all other purposes, this act shall take effect at the close of the polls at the general election in 1966 and sections 10.01, 10.02, 10.03 and 10.04, Florida Statutes, shall thereupon stand repealed.

### SUPPLEMENTAL OPINION

Following the order of the United States Supreme Court that a valid reapportionment plan be made effective for the 1966 elections, see Swann v. Adams, 383 U.S. 210, 86 S.Ct. 767, 15 L.Ed.2d 707, the Florida Legislature met in special session in March 1966 and passed a 48-senator, 117-representative plan. The state urges this court to accept that plan, arguing that it meets in all respects the federal constitutional one-man, one-vote requirement laid down in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964).

■ Plaintiff's major contention is that the variations in population per representative and senator are too great. Mathematical exactness or precision is not required, of course, but apportionment must be substantially on a population basis. Various tests have been used to analyze how close other plans have come to the ideal: the percentage deviation of a district's population from the average population per district, the population ratio of the largest district to the smallest district in the state, and the minimum percentage of persons in the state represented by a majority of the legislature.

Applying these tests to the proposed Florida plan, we find that the senate districts range from 87,595 to 114,053 in population per senator, or from 15.09% overrepresented to 10.56% underrepresented, creating a ratio of 1.30:1 between the largest and smallest districts. The deviation from the average population per senator is greater than 15% in only 1 district and is greater than 10% in 11 other districts. The minimum percentage of persons that could elect a majority of 25 senators would be 48.38%.

The suggested house districts range from 34,584 to 48,785 in population per representative, or from 18.28% overrepresented to 15.27% underrepresented, creating a population ratio of 1.41:1. The deviation from the average is greater than 15% in 7 districts and is greater than 10% in 22 other districts. The minimum percentage of persons that could elect a majority of 58 representatives is 47.79%.

■ Taken individually these statistics mean little, but collectively they tend

to indicate that the legislature's proposed plan is constitutionally valid. Compare WMCA, Inc. v. Lomenzo, 238 F.Supp. 916 (S.D.N.Y.), aff'd per curiam, 382 U.S. 4, 86 S.Ct. 24, 15 L.Ed.2d 2 (1965). Such departures as there are from the ideal are not sufficient in number or great enough in percentages to require an upsetting of the legislative plan. More important, what deviation there is does not discriminate to any great extent against any section of the state or against either rural or urban interests.

Other aspects of the proposed plan also have come under attack. First, three senators would not be required to run for reelection in 1966, but would be allowed to finish their present terms, which expire in 1968. Since these senators were elected in districts that are identical in territory to their districts under the proposed plan, we find no federal constitutional infirmity in allowing these senators to be continued in office. Second, one senate and six house seats are subject to residency requirements. We upheld such arrangements in a previous order and see no reason to reach any different result here. Accord, Fortson v. Dorsey, 379 U.S. 433, 85 S.Ct. 498, 13 L.Ed.2d 401 (1965). Finally, the proposed plan contains several multi-county, multi-representative or multi-senator districts. However unwise and undesirable these may be, we find nothing in their nature that violates the federal constitution. See Fortson v. Dorsey, supra.

An order will be entered herein in accordance with the present opinion.

### ORDER

It is, upon consideration,

Ordered and adjudged:

The plan of apportionment of the Florida Legislature, as found in HB 17-X(66), enacted in March 1966, meets federal constitutional standards and is accepted by this court as the standard to be used in selecting members for the 1967 session of the Florida Legislature.