**N.A.A.C.P., etc., Plaintiffs,**

v.

**GADSDEN COUNTY SCHOOL BOARD, Defendants.**

TCA No. 73-177.

United States District Court, N.D. Florida, Tallahassee Division.

March 6, 1984.

Kent Spriggs, Tallahassee, Fla., for plaintiffs.

C. Graham Carothers, Tallahassee, Fla., for defendants.

## MEMORANDUM OPINION AND ORDER

STAFFORD, Chief Judge.

Plaintiffs, representing a class of all black persons in Gadsden County, Florida, brought this action pursuant to 42 U.S.C., §§ 1971, 1973, 1981, 1983, and the Thirteenth, Fourteenth, and Fifteenth Amendments alleging that the at-large scheme for the election of school board members set

forth in Chapter 230, Florida Statutes unconstitutionally dilutes the vote of black electors in Gadsden County.

This case was initially consolidated for trial in 1974 with two other actions challenging the election scheme relating to the election of members of the Quincy, Florida City Commission and members of the Board of County Commissioners of Gadsden County, Florida. The action against the School Board was dismissed after the first trial and was remanded to this Court after Plaintiffs' successful appeal to the former Fifth Circuit. *McGill v. Gadsden County Commission*, 535 F.2d 277 (5th Cir.1976). This case was thereafter tried to the Court the second time in January of 1979. This Court withheld its opinion and decision pending resolution by the United States Supreme Court of disputed issues of law then pending before it in two decisions of the United States Court of Appeals for the Fifth Circuit in *Bolden v. City of Mobile, Alabama*, 571 F.2d 238 (5th Cir.1978) and *Nevett v. Sides*, 571 F.2d 209 (5th Cir.1978). Following the decision of the Supreme Court in *Mobile v. Bolden*, 446 U.S. 55, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980) and the Court's denial of certiorari in *Nevett v. Sides*, 446 U.S. 951, 100 S.Ct. 2916, 64 L.Ed.2d 807 (1980), this Court rendered its Memorandum Opinion and Order filed December 5, 1980 in which it found insufficient evidence to establish that Florida's change from single-member primary elections to at-large primary elections in 1947 was discriminatorily enacted. Additionally, this Court made its findings of fact that the existence of past discrimination in general in Gadsden County, Florida had not been shown to preclude the effective participation of blacks in the election process, and that black persons in Gadsden County were free to register, to vote, to choose the political party they wished to support and to fully participate in the nominating process of candidates for public office. On the basis of its findings, this Court concluded that the election scheme for nominating and electing school board members was neither conceived nor maintained for any discriminatory purpose and that the rights of black residents and voters of Gadsden County, Florida had not been illegally diluted.

Thereafter, an appeal of this Court's decision was taken by Plaintiffs to the United States Court of Appeals for the Eleventh Circuit which rendered its opinion and decision filed November 15, 1982 in which it reversed this Court's decision, and adopted and applied its decision in *McMillan v. Escambia County, Florida*, 638 F.2d 1239 (5th Cir.1981) in which it held that the 1947 change from single-member district primaries to at-large primaries had been enacted by the Florida Legislature with an "invidious purpose." *N.A.A.C.P. v. Gadsden County School Board*, 691 F.2d 978 (11th Cir.1982). That finding, when coupled with evidence of racially-polarized voting patterns and the historic inability of blacks to be elected to public office, was convincing proof to that court of the invalidity and illegality of the present at-large election scheme in Gadsden County for school board members. The Eleventh Circuit remanded the case with direction for this Court to fashion a single-member remedy.

On remand, this Court requested that the parties attempt in good faith to agree to a single-member district plan acceptable to both them and the Court. Although extensive and commendable efforts were made by both parties, no final agreement was reached. This Court, therefore, then requested the parties to prepare and submit their respective proposed plans requiring single-member districts for the nomination and election of school board members. The Plaintiffs submitted one plan for the Court's consideration, and two plans were submitted by the School Board.

The matter came on to be heard on final hearing before the Court without a jury on February 6, 1984. The parties have fully cooperated with one another in obtaining and sharing 1980 federal census data in the preparation of their respective proposed plans. Having heard testimony and having considered numerous exhibits offered by both parties and having heard argument by counsel and being otherwise fully advised

in the premises, the Court now enters its Findings of Fact and Conclusions of Law pursuant to Rule 52, Federal Rules of Civil Procedures.

## FINDINGS OF FACT

Immediately prior to the rendition of the opinion and decision of the United States Court of Appeals for the Eleventh Circuit in this case in fall of 1982, three black persons were elected to the School Board. One incumbent black person successfully ran for reelection unopposed to the Board, while two other black persons successfully ran for election to the Board for the first time. Thus, the five-member School Board consisted of three black persons and two white persons, all elected under the present at-large election scheme required by Chapter 230, Florida Statutes. The issue of whether to petition the Eleventh Circuit for rehearing in light of the 1982 election results was discussed by the Board. However, the School Board voted unanimously to decline to permit the filing of such petition basing its decision in large part on the fact that enough school board money had already been expended on this litigation.

In the previous trial held in January of 1979, an expert witness for the Plaintiffs testified that the earlier election of Harold Henderson, a black school board member, was the result of characteristics and qualities belonging exclusively to Mr. Henderson and that it was highly improbable that another black candidate would be successful under the present at-large election scheme in Gadsden County, Florida. The United States Court of Appeals for the Eleventh Circuit was never apprised of the election of two additional black persons in 1982 and this Court is greatly concerned and sensitive to the fact that it is called upon to completely uproot the at-large election scheme for school board members in a county which has recently produced two additional black school board members under the very election scheme held invalid by the United States Court of Appeals for the Eleventh Circuit.[1] However, in obedience to the mandate issued by the United States Court of Appeals, this Court has carefully considered the several plans proposed by the parties in order to choose one which will implement the decision of that Court.[2]

The School Board filed two proposed plans with this Court. Board Plan 1 was the plan preferred by the Board, and Board Plan 2 was the second preference of the Board. Board Plan 2 was a plan which had initially been prepared by Plaintiffs and submitted by them to the Board for its consideration.

■ Board Plan 1 consists of a plan which to a large extent follows current board member residence districts and current voting precincts. It has a maximum deviation of 12.5% in reference to total population and a maximum deviation of 15.1% with reference to voter age population. However, board member District No. 4 of the Board's proposed Plan 1 employs an area which is significantly larger than any of the other four districts in said plan, and therefore, lacks sufficient "compactness and contiguity" to be acceptable. *See Wyche v. Madison Parish Police Jury*, 635 F.2d 1151 (5th Cir.1981); *Zimmer v. Edwards*, 629 F.2d 425 (5th Cir.1980).

School Board proposed Plan 2 consists of a plan which has a maximum deviation of 19.4% as to total population, but which has a voter-age population maximum deviation of only 13.9%. Its member districts are compact, contiguous, and drawn in such a

---

**1.** This concern would not exist but for these recent events, and had they not occurred this Court would not have hesitated to implement a single-member district plan in this case.

**2.** The Plaintiffs have continued to urge that single-member districts are still required to protect against dilution of black voting and that the 1982 elections involved issues unique to that election which allowed white voters to "cross-over" and vote for the black candidates. Plaintiffs contend that there is no reason to believe this would occur again in the future. There is evidence in the record to support this contention. In addition, neither the Defendant School Board nor any other objecting or intervening party has opposed, subsequent to the Eleventh Circuit's November 15, 1982 decision, the implementation of a single-member district plan.

manner as to maximize the commonality of interests between communities and municipalities such as Midway and Havana. It preserves natural, political, and traditional boundaries while insuring that the voting potential of black persons is neither cancelled out or unduly minimized.[3] *Wyche v. Madison Parish Police Jury, supra.* Significantly, as mentioned earlier, this plan was originally created and proposed by the Plaintiffs and submitted by them to the School Board for its consideration. In essence, therefore, this is one of the Plaintiffs' plans although it was submitted to the Court by the Board.

■ The plan proposed by Plaintiffs has a maximum deviation of 10.8% for voterage population which is the most nearly balanced of all three plans, but a 21.5% maximum deviation relating to total population which is the greatest deviation of all three plans for that population group. In addition, this plan involves the use of 6 enumeration districts which were split or divided among several member residence district. The Court finds from the testimony that the manner in which the Plaintiffs calculated the total population and voter age population by race in these 6 enumeration districts is sufficiently imprecise and unreliable so as to preclude use of such plan.

## CONCLUSIONS OF LAW

■ The Court adopts Board Plan 2. The Court concludes that this Plan is composed of districts of reasonably equal population in accord with one-person one-vote requirements, *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1962); *White v. Regester,* 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973); *Connor v. Finch,* 431 U.S. 407, 97 S.Ct. 1828, 52 L.Ed.2d 465 (1977); *Wyche v. Madison Parish Police Jury,* 635 F.2d 1151 (5th Cir.1981); while at the same time insuring

that the voting potential of black persons is not minimized or cancelled. *Wyche v. Madison Parish Police Jury, supra.*

The present election scheme for members of district school boards may be found in Chapters 100 and 230 of the Florida Statutes. The School Board of Gadsden County is composed of five members who must be qualified electors of the district and who must be a resident of the school board member residence area from which the member is elected. Section 230.04, Florida Statutes. Each member is elected at the general election held in November of each numbered year and serves a term of four years. Sections 230.05, 100.031 and 100.041(3), Florida Statutes. Nomination of candidates in primary elections for each school board is by vote of the qualified electors of the entire district. Section 230.08, Florida Statutes. Each candidate receiving a majority of the votes cast in the first primary election is declared nominated for such office and a second primary election is held in all contests in which a candidate does not receive a majority, or where there is a tie vote. Section 100.061, Florida Statutes.

The election of members of the school board is presently by vote of the qualified electors of the entire district. Each qualified elector of the district is entitled to vote for one candidate from each school board member residence district being voted upon. The candidate from each member residence district receiving the highest number of votes cast in the general election is elected to the board and is not required to receive a majority of the votes cast. Section 100.041(3)(b), Florida Statutes.

■ The Court concludes that certain deviations from present state law will be required in the implementation of the new plan. The Court further concludes that the

---

**3.** Dr. Douglas St. Angelo gave expert testimony for the Plaintiffs regarding all three plans. His testimony was helpful to the Court in evaluating the plans. In response to inquiry from the Court, Dr. St. Angelo *testified that he felt Board Plan 2 would closely reflect the proportion of*

black voting strength in Gadsden County although not as closely as Plaintiffs' Plan. He believed Board Plan 1 would not reflect the appropriate proportion of black voting strength in the county.

terms of office for all persons now serving on the school board should be declared vacant effective upon the holding of the general election in November of 1984 and that all incumbent members of the school board should be required to run for reelection if they desire to hold office beyond the general election in November of 1984. *Mann v. Davis,* 238 F.Supp. 458 (E.D.Va. 1964), *aff'd,* 379 U.S. 694, 85 S.Ct. 713, 13 L.Ed.2d 698 (1965), *Swann v. Adams,* 258 F.Supp. 819 (S.D.Fla.1965), *rev'd,* 383 U.S. 210, 86 S.Ct. 767, 15 L.Ed.2d 707 (1966).

Accordingly, it is ORDERED, ADJUDGED AND DECREED by this Court as follows:

1. For the purpose of electing members of the School Board of Gadsden County, Florida the County of Gadsden shall be reapportioned into five single-member residence districts, the boundaries of which shall conform to those prescribed in the plan filed by the school board and referred to as Board Plan 2, a map and narrative description of the member residence districts being attached as an appendix to this Order. This map of the county showing such districts shall be available for inspection in the office of the clerk of this court as well as at the office of the School Board.

2. The terms of office of all persons currently serving as members of the School Board of Gadsden County, Florida shall expire on the second Tuesday following the general election to be held in November of 1984. To preserve the staggered terms now provided by law for members of the School Board of Gadsden County, Florida, those persons elected at the general election to be held in November of 1984 from member residence districts number 2, 3, and 4, shall initially serve for a term of two years, and those persons elected at the general election to be held in November of 1984 from member residence districts numbered 1 and 5 shall initially serve for a term of four years. Thereafter, all board members shall be elected for terms of four years, with terms commencing and expiring as provided by the law of Florida.

If, during the period of time this court retains jurisdiction of this action, there is any change in the law of Florida respecting these matters, the court reserves the power on motion of one or more parties, or on its own motion, to alter or change the requirements of this order to conform with the changed requirements of Florida law.

3. The nomination of candidates by each political party holding a primary election during any election year shall be by vote of only the qualified electors residing in the member district in which the candidate for that district must also reside. Each qualified elector of the entire district may only vote in the general election for one candidate from the school board member residence district in which the elector resides, and may not vote for any candidate residing in any other member residence district.

4. Each person hereinafter elected to the School Board of Gadsden County, Florida shall represent the entire district, as now provided by state law, rather than serve as the representative of a single school board member residence district.

5. Pursuant to 42 U.S.C. § 1973a, the court retains jurisdiction of this action for a period of five years unless such period is shortened or extended by further order of this court. During the period of retained jurisdiction by this Court, no voting qualification or prerequisite to voting, or standard, practice or procedure with respect to voting different from that in force or effect at the time this action was commenced shall be enforced unless and until the Court finds that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color; provided that such qualification, prerequisite, standard, practice, or procedure may be enforced if the qualification, prerequisite, standard, practice, or procedure has been submitted by the chief legal officer or other appropriate official of Florida or of the Gadsden County School Board to the Attorney General of the United States and the

Attorney General has not interposed an objection within sixty (60) days after such submission, except that neither this court's finding nor the Attorney General's failure to object shall bar a subsequent action to enjoin enforcement of such qualification, prerequisite, standard, practice, or procedure through the instant case or through an independent proceeding.

6. The School Board of Gadsden County, Florida shall be entitled to file a report with this Court during the period of its jurisdiction, together with its recommendations, if any, concerning the necessity of amending the boundaries of any of the five member residence districts and for such other relief as may appropriate to effectuate the provisions of this Order. A copy of any such report shall be submitted to Plaintiffs. Prior to its relinquishment of jurisdiction in this case, the Court shall make provisions for modifications or continuations of the aforementioned plan.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Defendant School Board of Gadsden County, Florida and its members individually and in their official capacities be and they are hereby enjoined from failing to:

A. redistrict and reapportion the school district of Gadsden County, Florida as set out above;

B. make and hold both primary and general elections as redistricted and ordered above;

C. comply with each and every provision relating to the nomination and election of members of the school board as ordered above.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Defendant School Board of Gadsden County, Florida shall serve a copy of this decision and order upon the Supervisor of Elections of Gadsden County, Florida, and that upon such service the Supervisor of Elections shall comply with each and every provision set forth above except as may be hereafter modified or amended by order of this Court.

The Plaintiffs are prevailing parties in this case and are entitled to attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and § 1973l (e) for all time and expenses reasonably expended by them in the course of this litigation. The parties shall have 30 days in which to attempt in good faith to agree on the amount of said fees, costs, and expenses. In the event no resolution is reached after said 30 days the Plaintiffs shall file their motion for same within 15 days thereafter. The parties are encouraged to resolve this entire issue or any sub issue related thereto so that the ultimate cost of this litigation may, at least for this stage of the litigation, be minimized.

## APPENDIX

### SCHOOL BOARD MEMBER RESIDENCE DISTRICTS FOR GADSDEN COUNTY, FLORIDA

*Residence District Number One*

Begin where State Road No. 63 intersects the northern boundary of Gadsden County, Florida; thence run southerly along the centerline of State Road No. 63 to the north boundary of the Town of Havana; thence westerly along said boundary to the west boundary of the Town of Havana; thence southerly along said boundary to the south boundary of the Town of Havana; thence easterly along said boundary to the centerline of State Road No. 63; thence southerly along the centerline of State Road No. 63 to its junction with State Road No. 159; thence southwesterly along the centerline of State Road No. 159 to its junction with State Road No. 270; thence northwesterly along the centerline of State Road No. 270 to its junction with State Road No. 12; thence westerly along the centerline of State Road No. 12 to Little River; thence southerly along the meandering of Little River to Lake Talquin and the southern boundary of Gadsden County, Florida; thence easterly along the Gadsden-Liberty County Line to the Ochlocknee River; thence northerly along the Ochlocknee River to the northern boundary of

Gadsden County, Florida; thence westerly along the northern boundary of Gadsden County, Florida to the point of beginning.

### Residence District Number Two

Begin where State Road No. 63 intersects the northern boundary of Gadsden County, Florida; thence run southerly along the centerline of State Road No. 63 to the north boundary of the Town of Havana; thence westerly along said boundary to the west boundary of the Town of Havana; thence southerly along said boundary to the south boundary of the Town of Havana; thence easterly along said boundary to the centerline of State Road No. 63; thence southerly along the centerline of State Road No. 63 to its junction with State Road No. 159; thence southwesterly along the centerline of State Road No. 159 to its junction with State Road No. 270; thence northwesterly along the centerline of State Road No. 270 to its junction with State Road No. 12; thence westerly along the centerline of State Road No. 12 to Little River; thence southerly along the meandering of Little River to the centerline of U.S. Highway 90 (State Road No. 10); thence northwesterly along the centerline of U.S. Highway 90 to the centerline of State Road No. 268; thence northwesterly along the centerline of State Road No. 268 to State Road No. 379A; thence northwesterly along the centerline of State Road No. 379A approximately one-half (½) mile to a finger of Quincy Creek; thence northeasterly along said finger to its junction with another finger of Quincy Creek; thence northeasterly up the second finger of Quincy Creek to a point where it crosses a hard-surfaced road; thence westerly along said hard-surfaced road to its junction with State Road No. 379A; thence northerly along the centerline of State Road No. 379A to its junction with State Road No. 272; thence southeasterly along the centerline of State Road No. 272 to its junction with State Road No. 267; thence northwesterly along the centerline of State Road No. 267 to the north boundary line of Gadsden County, Florida; thence easterly along the north boundary line of Gadsden County, Florida to the point of beginning.

### Residence District Number Three

Begin at the intersection of the Gadsden-Liberty County Line and Poley Branch; thence run west, north, west, north and west to the Apalachicola River; thence northeasterly along the Apalachicola River to the Florida-Georgia Line; thence east along the Florida-Georgia Line to State Road No. 379B; thence southwesterly along the centerline of State Road No. 379B to its junction with a graded road; thence southerly along the centerline of said graded road to State Road No. 268; thence northwesterly along the centerline of State Road No. 268 to a finger of Flat Creek; thence southwesterly along said finger of Flat Creek to Flat Creek; thence westerly along the thread of Flat Creek to State Road No. 270A; thence southeasterly along the centerline of State Road No. 270A to State Road No. 379; thence southerly along the centerline of State Road No. 379 to State Road No. 269B; thence westerly and southerly along the centerline of State Road No. 269B to Poley Branch; thence southerly along the thread of Poley Branch to the point of beginning.

### Residence District Number Four

Begin at the intersection of the Gadsden-Liberty County Line and State Road No. 65; thence run northeasterly along the centerline of State Road No. 65 to State Road No. 65B; thence southeasterly along the centerline of State Road No. 65B to a graded road; thence northeasterly along the centerline of said graded road to its intersection with Cane Creek; thence easterly along the thread of Cane Creek to the thread of Rocky Comfort Creek; thence southeasterly along the thread of Rocky Comfort Creek to State Road No. 267; thence northerly along the centerline of State Road No. 267 to the southern boundary of the City of Quincy; thence west along said boundary to the western boundary of the City of Quincy (Atlanta Street); thence north on Atlanta Street to Experiment Street Road; thence east along the

centerline of Experiment Station Road to Cleveland Street; thence north along the centerline of Cleveland Street to U.S. Highway 90 (State Road No. 10); thence easterly along the centerline of U.S. Highway 90 to the centerline of State Road No. 268; thence northwesterly along the centerline of State Road No. 268 to State Road No. 379A; thence northwesterly along the centerline of State Road No. 379A approximately one-half (½) mile to a finger of Quincy Creek; thence northeasterly along said finger to its junction with another finger of Quincy Creek; thence northeasterly up the second finger of Quincy Creek to a point where it intersects with a hard-surfaced road; thence westerly along the centerline of said hard-surfaced road to its junction with State Road No. 379A; thence northerly along the centerline of State Road No. 379A to its junction with State Road No. 272; thence southeasterly along the centerline of State Road No. 272 to its junction with State Road No. 267; thence northwesterly along the centerline of State Road No. 267 to the north boundary line of Gadsden County, Florida; thence west along said boundary line to State Road No. 379B; thence southwesterly along the centerline of State Road No. 379B to its junction with a graded road; thence southerly along the centerline of said graded road to State Road No. 268; thence northwesterly along the centerline of State Road No. 268 to a finger of Flat Creek; thence southwesterly along said finger of Flat Creek to Flat Creek; thence westerly along the thread of Flat Creek to State Road No. 270A; thence southeasterly along the centerline of State Road No. 270A to State Road No. 379; thence southerly along the centerline of State Road No. 379 to State Road No. 269B; thence westerly and southerly along the centerline of State Road No. 269B to Poley Branch; thence southerly along the thread of Poley Branch to the Gadsden-Liberty County Line; thence east, south and east along the Gadsden-Liberty County Line to the point of beginning.

*Residence District Number Five*

Begin at a point where U.S. Highway 90 (State Road No. 10) intersects Little River; thence follow the meanderings of Little River southerly to Lake Talquin and the southern boundary of Gadsden County, Florida; thence southwesterly along the southern boundary of Gadsden County, Florida to the Gadsden-Liberty County Line; thence west, north, west, north and west along said Line to State Road No. 65; thence northeasterly along the centerline of State Road No. 65 to State Road No. 65B; thence easterly along the centerline of State Road No. 65B to a graded road; thence northeasterly along the centerline of said graded road to its intersection with Cane Creek; thence southeasterly along the thread of Cane Creek to Rocky Comfort Creek; thence southeasterly along the thread of Rocky Comfort Creek to State Road No. 267; thence northerly along the centerline of State Road No. 267 to the southern boundary of the City of Quincy; thence west along said boundary to the western boundary of the City of Quincy (Atlanta Street); thence north along said western boundary to Experiment Station Road; thence east along the centerline of Experiment Station Road to Cleveland Street; thence north along the centerline of Cleveland Street to U.S. Highway 90 (State Road No. 10); thence easterly and southeasterly along the centerline of U.S. Highway 90 to the point of beginning.